Good morning to all of you. Thank you for being here. Judge Bybee and I are very happy to be here in Pasadena, and we're pleased to welcome Judge Fischer, who is sitting by the third circuit, and we appreciate his help. Thank him for being here. We have a number of submissions today. I'll briefly go through those now. Martinez Ordonez v. Garland is submitted. Idris v. Garland is submitted. And Muhammad v. Garland is also submitted. We'll take up the remaining cases in the order they appear on the calendar. So we will first hear argument in Zhang v. Garland. Each side will have 10 minutes. Mr. Osei-Bonsu, you may begin when you're ready. Good morning, Your Honor. If I may please the court. Derek Osei-Bonsu of Reed Smith on behalf of Petitioner Gangshui Zhang. Your Honor, I'd like to reserve two minutes for rebuttal. Your Honor, we're here today to discuss the due process and evidentiary deficiencies that resulted in the improper average credibility determination against Mr. Zhang. Mr. Zhang was arrested, detained, tortured, and placed under constant surveillance by the Chinese government as a direct result of Mr. Zhang's actions. Mr. Zhang's challenges to the corrupt employment practices of the post office, Mr. Zhang's employer while in China. As such, evidence of Mr. Zhang's employment with the post office was central to his claims. Now, there were two intrinsically intertwined due process violations that resulted in the improper adverse credibility determination. The first of which was the ineffective assistance of counsel Mr. Zhang suffered during the merits hearing and before the merits hearing, which deprived him of a fundamentally fair hearing and significantly prejudiced his ability to reasonably present himself before the court. Prior to the merits hearing, Mr. Zhang's counsel failed to collect readily available and critical evidence of Mr. Zhang's employment with the post office in the forms of his household registry and his employment certificate, both of which substantiated Mr. Zhang's employment with the post office. Now, Mr. Zhang only learned of his counsel's errors at his merits hearing while he was on the stand. What would the household registry have shown? The household registry would have shown that Mr. Zhang was employed with the post office. It's a notarized document issued by the government that has his name, address, as well as place of employment. And he learned that this was not submitted while on the stand. Was that really in dispute? I'm sorry. Was that really in dispute, that he was employed by the post office? Well, Your Honor, the immigration judge presiding over his case noted that to the criticalness of his employment status. It was actually the first substantive question. But as I read the IJ, and I'm going to have lots of questions from the government, but as I read the IJ's opinion, he said that he was for the most part credible. So it doesn't appear that he challenged at all. The idea that he testified for the most part consistent with his declaration. That's page two of the IJ's decision. So I don't see that the IJ made any credibility finding with respect to your client about the nature of his employment. He didn't seem to challenge that part of your client's testimony. I'm just wondering what the relevance of the IAC is as opposed to the other problems with the BIA's decision. Yes, well, Your Honor, if you look at page, administrative record page 68, the IJ notes that the failure to present evidence of his employment was critical to his claims. And then goes on later in the oral opinion to note that given the nature of his testimony, he was expected to have presented evidence of his employment with the post office. Now, again, this ties into the second due process issue, which I'll get to in a moment. But again, on the stand, Mr. Zhang learned his employment evidence had not been submitted and attempted to proffer this evidence himself. The first substantive question he was asked by the immigration judge was where his household registry was. It was the immigration judge who noted the importance of this registry, to which Mr. Zhang attempted to proffer this evidence. He was denied. So let me ask you this, are you raising these due process violations in this appeal or are you just noting them to us? Well, no, the due process violations, the board didn't decide to rule on the due process claim. I believe the board touched on the due process claim and they were brought in in the brief to the BIA. The ineffective assistance of counsel will certainly argue. But the board declined to address them. Your Honor, I disagree with that. I believe that the board noted that Mr. Zhang wasn't prejudiced by the failure to submit evidence. I think that given that prejudice is a factor in that determination, I believe that the board did touch on this issue. Notwithstanding the fact that the adverse credibility determination itself was predicated on your issue. So your answer is you are raising that before us? Yes. Now, so again, Mr. Zhang attempted to proffer this evidence that he had with him in the courtroom given that his attorney had not submitted it and this evidence was rejected by the immigration judge. It's at this point that there was a second failure to provide effective assistance of counsel. Now, Mr. Zhang's counsel stated that he had not received these documents despite Mr. Zhang's testimony under oath that he had provided these documents. If we take Mr. Zhang's counsel at their word, we are now placed in a situation where critical evidence that the immigration judge has requested, which substantiates a significant portion of Mr. Zhang's claims, has now appeared before him. Mr. Zhang's counsel took no steps to seek admission of this evidence. He did not ask for recess or continuance. He did not make an oral motion for the admittance of untimely evidence as provided by the immigration court policy handbook. Nothing. In fact, he also declined redirect despite the clear frustration of the immigration judge that this evidence had not been submitted. And as this court has previously ruled, failure to submit readily available evidence that substantiates a petitioner's claims is not a harmless error. It can rise to the level of prejudice necessary to support a finding of ineffective assistance of counsel. Why don't you address the two inconsistencies that the IJ fund led to the adverse credibility determination? Yes, the two inconsistencies I believe you're referring to be what was unclear when Mr. Zhang first saw government assistance. Well, Your Honor, I would argue that that inconsistency is immaterial. The government at no point in any of its briefing noted the purpose of that inconsistency. Mr. Zhang stated on the record that he misunderstood the question, and he believed the government was asking him simply about when he initiated his petition process, which is a formal process to have these employment acts reviewed. The previous visits were more of a fact-finding initiative. But notwithstanding that fact, the government has not articulated any reason as to why visiting the government office, any government office prior to the petition, was of any merit. Regardless of whether Mr. Zhang visited government offices a hundred times beforehand, what matters is that when he visited this one after the petition... Whether or not the information is relevant, the determination was that your claim was not credible because of the way that that response was provided to the IJ. So, putting aside whether the information or the information was contested by the government to be relevant or irrelevant, what is your best argument for why the IJ's determination on credibility was erroneous? My best argument is that it was simply a misunderstood question. Mr. Zhang noted on the record that he misunderstood what the government was asking. And this is, again, a non-native English speaker who is not familiar with the legal system who is being asked a very, in his mind, confusing question. And he noted that confusion on the record. But there was another inconsistency that the IJ noted that had to do with whether or not he was hospitalized, whether he was operated on during a hospitalization. Yes, Your Honor. Was it that important? I would argue that that was less of an inconsistency and more of just an incomplete record. Mr. Zhang was even saying that's an omission. I'm sorry. Are you calling that an omission instead of an inconsistency? I'm hesitant to use the word omission. I think Mr. Zhang provided credible testimony to it. He just was not able to secure the record of that. The IJ was more concerned with the fact that there wasn't corroborating evidence in the record. Not that it was, in fact, inconsistent. It wasn't as if Mr. Zhang said that he had a shoulder injury when, in fact, the documents showed that he had a knee injury. It was that the records didn't support the statements that he needed surgery and was hospitalized for 10 days. Is that right? I believe what the IJ noted as an inconsistency, though, and it was presented as an inconsistency by the government, I believe the record indicates that Mr. Zhang, he's noted that he was not able to receive these documents. He did make an effort to obtain them. He was not able to get them. While we admit there was a hole in the record, we do not believe that hole, in totality, the circumstances were rendered, was sufficient to render an average liability determination, and no part of that was inconsistent with Mr. Zhang's testimony. Your Honor, I see I'm running out of time, so I'd like to reserve the remainder for rebuttal. Thank you. Mr. Williams, you'll have 10 minutes. 10 minutes, thank you. Good morning. John Williams on behalf of the government. This is an immigration case where the immigration judge found the petitioner lacked credibility and denied his asylum application and all related relief. The board affirmed the immigration judge's determination that the petitioner lacked credibility. Substantial evidence supports that finding. The agency cited specific and cogent reasons. Counsel, let's start with the BIA's decision on page 2. The BIA says a review of the record indicates that the immigration judge made an explicit adverse credibility finding. That's correct. Now, where's the explicit adverse credibility finding? Page 8 of the immigration judge's decision, the respondent has the burden of proof to show that his application is credible and that his evidence is credible and authentic. And throughout the immigration... Counsel, that's not an explicit adverse credibility finding. Counsel, I know what an explicit adverse credibility finding looks like in an IJ, and that's when an IJ says he's testified and he hasn't testified credibly. Now, I saw that IJ used the word credible, but this was an oral decision, and it just appears to be a great deal of imprecision in the way he's used credibility. I don't see that he's really found that he didn't testify credibly. He found that he testified incompletely and was unable to provide corroborating evidence. That's burden of proof. That's not adverse credibility. Well, throughout the decision as a whole, the immigration judge is identifying inconsistencies on a reliable level. Give me an inconsistency. For example, when we look at the petitioner, he started his employment allegedly with this post office in September 1990, the end of 1990, beginning of 1991. Some 20 years later, he went to submit, he claimed in May 2010 was his initial testimony that he went to complain that he had filed a complaint about not being made from an intern to a formal employee and that he had been promised this within three to five months of his employment. So here he waited for what he said was something that was supposed to happen in three to five months of his employment. He waited 20 years, and then in May 2010, he went and requested to some formal office. And he varies back and forth. I read this record pretty carefully. I think he was really quite consistent in his testimony. There's a confusing question as to whether this was the first time he'd been to any government office. And there's some confusion over the title of various offices. But we have testimony about the September 2009 and then the May 2010. And the August 2009 as well. Maybe it was August 2009. That would have only enhanced his story if he had gone earlier. But that's not what he was standing on. He was standing on the fact that he got persecuted when he went back in May 2010. And he was very, very specific and very insistent on the precise date. I just don't see any inconsistency here at all. Well, that's a clear inconsistency as to this goes to the heart of his claim. What goes to the heart of his claim? When he made this challenge. Why? Because that's why he said that he was persecuted, because he was filing complaints with official offices. That's what he said. But he said in August of 2009, he went to somebody. It was like a labor arbitration. Something similar to an arbitration as opposed to a petition or a complaint. What does he insist on with all that? And he did not complain that they mistreated him there. It's when he went in May 2010, he said that they mistreated him. That he was then picked up by the police and beaten. And then again, he said that in September 2010, he was intercepted while on a bus. But it's unclear how the knowledge of that transpires. And then he was taken, detained, and beaten. And through that beating, he claims initially that he was detained and initially treated. But then he testified that he was hospitalized for ten days. That he received surgery. But the indication, the medical report indicated that he was an outpatient. So he went, suppose, however this happened, he went to an emergency room. Okay, he goes to the emergency room. The equivalent of an emergency room here. And he presents that report. The fact that he presented that report doesn't mean that he hadn't been hospitalized for an additional ten days and had surgery. I don't see how the presentation of that report itself means that what he didn't report was an inconsistency. It may have been an omission. This is a failure, if anything, this is a failure of proof. And the IJ could have decided on that basis and the PIA could have said it was on that basis. But I don't see that there's anything there to support an adverse credibility finding. The inconsistencies compile. He requested documents which were in the record from his wife. And there's no mention. Again, though, what you're talking about is that he's trying to supplement the record or provide information to corroborate his declaration and his testimony. But it's not inconsistent. I think what we're focused on is the difference between the lack of corroboration in the record versus information that is inconsistent. So can you point us anywhere in the record to facts and testimony that he provided that is inconsistent with his claim of needing surgery and being hospitalized for ten days? And we understand that there's an outpatient record that says he also was in the outpatient. But where is there testimony that contradicts his statement about the surgery and the ten-day inpatient care? Well, in the administrative record 121 through 125, he's initially testifying that he was hospitalized. He received surgery. And he was an inpatient for ten days. And so then he submits a medical record. And that medical document at 177 says that he was an outpatient. And there's no mention of surgery. Facts and inconsistency. His wife, David, doesn't mention. It's a lack of proof. And on page 125 of the record, Mr. Kristol to Mr. Zhang, and I'm looking at this statement from your wife, sir, all it discusses about your hospitalization was that you were hospitalized, and that's all it says. Okay, so his wife has corroborated that he was hospitalized. No other details, so we don't really have anything to corroborate your statement. Again, that's a failure of proof, not an inconsistency. They haven't trapped him into showing that he's making this up because he's embellished his statements, and he hasn't been able to tell the same story twice. He tells a very consistent story. It may be not enough to get him asylum, but that's different from an adverse credibility finding. Well, one of the issues with this case is if we look at the petitioner who came to this country in September 2011. He filed an asylum application affirmatively in February 2012. So he had time to put together and present his case. The BIA may have wonderful grounds for telling him that he's not entitled to asylum, but I don't see that the record will support that he's been lying to the IJ. The adverse credibilities are based on the totality of the circumstances, so what I'm trying to share with the court is when you look at this record in totality, there are inconsistencies, omissions. There is evidence that is not authentic. The petitioner even said before the judge, he said, how did you, when you went to the American consulate to obtain a visa to come to the United States, what did you do? I presented documents that are not authentic. And the false documents is actually the best evidence you've got of adverse credibility, and he's admitted this. And it is throughout the record, and you go down. When you look at the evidence and whether or not it's been authenticated, and you look for corroboration or consistencies, you can look at the coworkers' affidavits. They don't indicate their employment. They don't talk about what happened in the detention center. He said that the coworkers, that they were coworkers. We're not even sure that they were coworkers. There's not evidence of that, that they truly were. Then he says that they know what happened in the prison. They don't know that even the petitioner said, well, actually, I told them what happened. So it's hearsay. You know, the medical documents, which we've talked about. The administrative detention notice, he submitted, it indicates that he was detained May 2010. But there's no reference to September 2010. I see my time is wrapping up. There is an amount of the documents there, but they are unreliable. They're not authenticated. And what I would say is that the petitioner has not presented a compelling evidence to overturn the board's decision in this case. That's substantial evidence. It supports the decision. Thank you.  I just wanted to address certain things that counsel for the government noted on the record. First, in terms of when Mr. Zhang first sought redress, on page 93 of the administrative record, Mr. Zhang testified that he did, in fact, seek redress from his employers prior to going to any government office or seeking assistance from them. So this is not a situation where he waited 20 years to finally take action to his own hand. Again, Mr. Zhang was very consistent that he was addressing the situation in all these manners he thought possible. In terms of the documents Mr. Zhang presented to enter the country, this court has routinely held that providing inauthentic documents in order to escape persecution in their native country cannot negatively impact an adverse credibility determination. Now, Mr. Zhang stated on the record at the immigration hearing that he presented these documents because he believed that was the only way he would be able to get into America and out of China in a situation where he was still actively being surveilled. Did the VIA rely on the false documents? I do not believe the VIA referenced the false documents in their decision. They noted the visit to the government office as well as the lack of the record for his name. Is there any indication of state? And that concludes my time. Thank you, Your Honor. Thank you. The case to submit will be submitted. And I'd also like to thank Pro Bono counsel for arguing this case. It really means our court significantly when we have counsel working in Pro Bono matters. Thank you. It was my pleasure, Your Honor.
judges: BYBEE, Fisher, DESAI